United States District
District of Connecticut

Alex Velez                    Prisoner
                              Case No. 3:03CV299(RNC)(DFM)

v.

Jensen, et al.                February 23, 2004

<u>Memorandum of Law in Opposition to
Defendant's Motion to Strike and Dismiss</u>

<u>Background</u>

The defendants have moved to strike paragraphs thirty and thirty-one of the amended complaint on the grounds that the facts contained therein are immaterial to this action. They have also moved to dismiss Defendant Neville as a defendant.

<u>Argument</u>

A. <u>Standard for evaluation of a motion to strike and/or dismiss</u>

In determining whether or not to grant a defense motion to strike portions of a complaint or to dismiss a defendant from an action, a court must begin by

considering the allegations of the complaint to be factually true and should construe any ambiguities in the complaint in favor of the Plaintiff.

The Plaintiff also requests that the Court take into account that the Legal Resource Center at Garner Correctional Institution contains no Federal law or materials more recent than 1992 and has been closed for all except one morning since January 19, 2004. In addition, the Connecticut Inmates' Legal Assistance Program, which is contracted to provide limited legal assistance to inmates engaged in lawsuits against the Dept. of Corrections or its officials, has failed to respond to the Plaintiff's request for assistance.

B. <u>Paragraphs Thirty and Thirty-one of the Amended Complaint are relevant to the issue of damages and should not be stricken.</u>

Paragraph Twenty-eight (28) states that the Plaintiff was housed in the Intensive Mental Health Unit (IMHU) at Garner CI from August 15th until

after September 18, 2002. Paragraph Thirty-eight (38) states that the Plaintiff's confinement in IMHU was a result of the false statements of Defendant's Jensen and Spring. Paragraphs Seventy-six (76), Seventy-nine (79), and Eighty (80) seek damages for the cruel and unusual punishment inflicted upon the Plaintiff by defendants Jensen and Spring and specifically for the period that the Plaintiff was housed in IMHU.

The legal action identified in Paragraph 30 alleges that inmates confined in IMHU are subjected to cruel and unusual punishment. This action is on-going in Federal court. Should the case result in declaratory relief stating that the treatment of inmates in the IMHU violates their rights under the Eighth and Fourteenth Amendments, this would be relevant to the issue of damages due to the Plaintiff in the present case. Thus, Paragraph 30 is material.

Paragraph 31 was included because although Defendant Gomez is a defendant in the case identified in Paragraph 30, his name does not appear in the traditional, shortened, title of the case. The paragraph was provided solely for clarity.

C. <u>Defendant's objections to Paragraphs Thirty and Thirty-one are spurious.</u>

In their Memorandum supporting the Motion to Strike, the Defendants state that "Indeed, inmates sue correctional officials to an excessive extent. Moreover, this case does not concern the mental health treatment. Other than an attempt to prejudice or confuse the jury, such allegations have no purpose in this civil action."

The title of the action identified in Paragraph 30 clearly states that the correctional officials are being sued by the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities. Regardless of Defendants' opinion of the worthiness of inmate suits, officials of the State of Connecticut appear to believe there is a problem and they, not inmates, are bringing suit.

Plaintiff has not alleged any mental health issue, he merely alleges that he suffered compensatable injury by being confined in IMHU as a consequence of the false statements of Defendants Jensen and Spring. If the Defendants wish to argue that he suffered no injury or that it was not the actions of Jensen and Spring which led to his incarceration in IMHU,

those are issues of fact for the trier of fact.

Finally, the instant case is not before a jury and may never come before a jury. In fact, the Plaintiff has no objection in principle to having the issues decided by a judge. Such a trier of fact would have the knowledge and expertise to set aside such prejudicial issues that might arise. And, should the Paragraph 30 case be resolved in favor of those plaintiffs, and should this action eventually come before a jury, the defendants would be free to argue for the exclusion of confusing or prejudicial material at that time. At this point, their objection is speculative and premature.

D. <u>Defendant Neville is not properly before the Court.</u>

On November 25, 2003, the Court issued an order for the Plaintiff to provide forms for service for, among others, Defendant Neville. This order was the result of an earlier question raised by Assistant Attorney General Lanoue, counsel for the defendants, which stated that Defendant Neville had not been served in his individual capacity. The necessary forms were provided by the Plaintiff

on or about December 17, 2003.

On February 5, 2004, Plaintiff filed a motion asking the court to order personal service upon Neville, among others, because Plaintiff had not received any notice that Neville had responded to service by mail. At this time, Plaintiff has still not received notice of any sort that Defendant Neville has entered an appearance in his individual capacity or that Attorney Lanoue has entered an appearance on his behalf. Thus, in his individual capacity, Defendant Neville has not subjected himself to the jurisdiction of this court and cannot have standing to seek dismissal.

If Defendant Neville has filed an appearance in his individual capacity, the Plaintiff requests that the Motion to Dismiss be denied as a sanction for failing to comply with the Court's rules for notification to parties. If the Court determines that Attorney Lanoue is permitted to seek dismissal of Defendant Neville from this suit due to Lanoue's representation of Neville in an official capacity, the Plaintiff requests that the Motion to Dismiss be denied as a sanction for wasting the Plaintiff and the Court's time with the issue of individual service when Neville had constructive and actual knowledge of the suit and was represented by

counsel.

E. <u>Defendant Neville should not be dismissed from this action.</u>

The defense appears to argue that Defendant Neville should be dismissed from this action because:

1. There is insufficient evidence that Defendants Jensen and Spring acted improperly, and, therefore, Neville's actions were proper. The defense argues that since disciplinary hearing officers use judgement in making their decisions, the fact that Neville came to a different conclusion is not evidence that he violated the Plaintiff's rights. The defense also argues that the disciplinary officer's decision does not constitute proof that Jensen and Spring acted improperly.

However, as previously noted, in reviewing a motion to dismiss, the court takes as a given the facts in the plaintiff's complaint. Therefore, at this point in the proceedings, the assault on the Plaintiff by Defendants Jensen and Spring is a given. (Paragraphs 17 through 21 of the Amended

Complaint.) The remaining question, therefore, is whether, given the available evidence, Defendant Neville reasonably came to a different conclusion than the disciplinary hearing officer concerning the conduct of Defendants Jensen and Spring, or whether his conclusion and subsequent inaction were so unreasonable as to constitute a violation of the Plaintiff's right to a safe environment. In light of the disciplinary hearing officer's conclusion that Jensen and Spring's descriptions of the incident were not credible (Paragraph 36), Plaintiff submits that there is grounds to suspect that a trier of fact could find that Neville acted with deliberate indifference in concluding that Jensen and Spring acted "in a professional manner."

    2. The Plaintiff has no Constitutional or Federal legal right to any action by Neville.

    In arguing this issue, the defense makes several statements which are true but irrelevant. First, that the Plaintiff did not allege that Defendant Neville was involved in the use of excessive force against the Plaintiff. Second, that Defendant Neville was not involved in the use of excessive force. Third, that Defendant

Neville had no power to remedy the use of excessive force. And, finally, that the Plaintiff does not allege that Defendant Neville ignored incidents of excessive force in the past.

The remaining portions of the defense's argument boil down to allegations that:

a) The Plaintiff alleges Neville failed to discipline Jensen and Spring;
b) The Plaintiff has no right to have such discipline take place;
c) Even if such a right existed, Neville had no authority to discipline Jensen and Spring;
d) Even if Neville did have such authority, imposition of discipline is a matter of judgement and descretion;
e) The only possible remedy Neville could have provided was dismissal of the disciplinary charge, which had already occured;
f) Neville did not ignore Plaintiff's complaint; and
g) The Plaintiff seeks damages for Defendant Neville's failure to punish Jensen and Spring.

To begin with, Plaintiff has alleged that Neville's actions, or rather, deliberate inaction, helped to create an unsafe environment for the Plaintiff (Paragraphs 65 through 67), and he seeks relief from and damages for this violation of his Constitutional rights (Paragraphs 73, 81, and 82). The Eighth Amendment to the Federal Constitution guarantees protection from "cruel and unusual" punishment. The courts have held that this includes protection from violence by other inmates (Connecticut Prisoners' Rights by Peter Stern, hereafter CTPR, published in 1997 by the CT Civil Liberties Union Foundation and the Jerome N. Frank Legal Services Organization of Yale Law School, page 67, citing Farmer v. Brennan, 511 U.S. 825 (1994)), and protection from unreasonable and excessive force by prison officials (CTPR, pg 81, citing Hudson v. McMillian, 503 U.S. 1 (1992)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" CTPR, pg 67, quoting Farmer v. Brennan at 834.

"For a prisoner to show that his or her Eighth Amendment rights have been violated.... He or she must also show that at least one prison official.... acted with 'deliberate

indifference regarding the deprivation [of a basic human need] about which the prisoner is complaining." CTPR, pg 60, internal quotations omitted. "But deliberate indifference does not require purposeful acts; officials can violate the Eighth Amendment without engaging in conduct undertaken for the very purpose of causing harm. In fact, prison officials can act with deliberate indifference without actually doing anything at all, if they fail to act knowing that inmates will suffer significant risk of serious harm from their inaction." Id., citing Hathoway v. Coughlin, 37 F.3d 63, 66 (2nd Cir. 1994). "Inmates do not always have to wait until they have been injured to bring suit under the Eighth Amendment. It is enough that the deprivation is likely to lead to future harm..." Id., citing Helling v. McKinney, 509 U.S. 25, 33-35 (1993). Since the Plaintiff has alleged that Defendant Neville's inaction helped create the likelihood of future assaults by corrections officers upon inmates, the complaint alleges a clear violation of the Plaintiff's rights by Neville.

It is true that the Plaintiff does not have a Constitutional right to a specific action by a correction's official in every instance based solely on a complaint made by the prisoner. The courts rightly grant great deference to the judgement and descretion of such officials in the performance

of their duties in a difficult environment. But such deference is not unlimited. If defendants Jensen and Spring are found to have behaved "maliciously and sadistically for the very purpose of causing harm" (see Hudson v. McMillian, 503 U.S. 1, 6 (1992)), they will be held to have violated the Plaintiff's rights. Similarly, as noted above, if Defendant Neville is found to have been deliberately indifferent to a serious deprivation of a basic human need (see Anderson v. Coughlin, 757 F.2d 33, 35 (2nd Cir. 1985)), his actions will have violated the Plaintiff's rights.

    The Plaintiff's appeal to Neville had nothing to do with the disciplinary charge. The Complaint clearly states that the Plaintiff was directed to address the Plaintiff's Grievance allegation of the assault by Jensen and Spring to Neville. (Paragraphs 53 through 57). An appeal after the disciplinary hearing would have gone through entirely different administrative channels. In fact the Grievance Process of the Connecticut Dept. of Corrections does not allow inmates to address disciplinary actions. (See D.O.C. Administrative Directive 9.6, "Inmate Administrative Remedies," Section 6.B.3 and D.O.C. Admin. Directive 9.5, "Code of Penal Discipline.")

    That Defendant Neville had authority in

the matter of the assault on the Plaintiff is shown by the fact that Plaintiff was instructed by the Grievance Coordinator to address Neville on the matter. (Paragraphs 53 through 56) Furthermore, rather than refer the Plaintiff to some other, responsible, corrections official, Neville responded, in a fashion, to Plaintiff's Inmate Request. (Paragraphs 57 and 58) The amount of authority Neville had to deal with the matter remains a question for discovery and trial, but he clearly had some.

The question then becomes whether, given his level of authority and the information available to him, Defendant Neville acted reasonably or whether he was deliberately indifferent to the unsafe condition the Plaintiff faced, i.e., a possible repeat of the assault by Jensen, Spring, or other corrections officers who saw the lack of negative consequences following the attack on Plaintiff as a license to behave in like fashion in the future. (Paragraphs 66 and 67). Although the Plaintiff faces a heavy burden of proof on this issue, it is a question of fact properly resolved at trial.

As the defense noted in their memorandum, a supervisory official may

be found to have been personally involved in the deprivation of an inmate's rights by failing to remedy the wrong after the violation was brought to his attention (citing <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994)). The assault was clearly brought to Neville's attention. The risk of future assaults was clear from the fact that the Plaintiff had informed D.O.C. officials of a problem prior to the first assault (Paragraphs 42, 43 and 44) and no change had been made to the conditions under which the attack occured. It was clearly the responsibility of Neville, as a corrections officer informed of the attack, to take whatever actions he could to prevent a recurrance. Neville choose to deny that a problem ever existed.

<u>Conclusion</u>

Paragraph 30 of the Plaintiff's Amended Complaint is relevant to damages and paragraph 31 was included for clarity. Neither paragraph should be stricken. For the reasons given, Defendant Neville should not be dismissed from the action.

By the Plaintiff

<u>Alex Velez</u>

Alex Velez   223011